IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| IN RE | ) |
| ROBIN POE<br>DENISE POE, | )<br>) |
| Debtors, | )<br>) |
| COMMONWEALTH LAND TITLE<br>INSURANCE COMPANY, | )<br>) |
| Plaintiff, | )<br>) |
| v. | )   CIVIL ACTION NO. 04-0357-CB-L |
| ROBIN POE and<br>DENISE POE, | )<br>) |
| Defendants. | ) |

## **OPINION and ORDER**

This matter is before the Court on appeal from the bankruptcy court's order granting summary judgment in favor of Commonwealth Land Title Company (Commonwealth) in their adversary action seeking to exercise a right of redemption as to property owned by debtor Robin Poe, who filed an petition in bankruptcy along with his wife, Denise Poe. For the reasons set forth below, the Court affirms, in part, and reverses, in part, the decision of the bankruptcy court.

**Facts**

This dispute relates to the ownership of property located in Baldwin County, Alabama. In 1995, Clell and Krystine Hobson (the Hobsons) purchased a one-acre lot by warranty deed, then later subdivided the lot into two parcels. The Hobsons retained the larger parcel (Parcel 2) on which their

residence was located and sold Parcel 1 to Dale Zuehlke in January 2001. As part of the Hobson/Zuehlke transaction, the Hobsons' mortgage company issued a partial release intended to release Parcel 1 from the mortgage lien. The release was mailed to the Hobsons but was not recorded.

The Hobsons subsequently defaulted on the mortgage, and because the release had not been recorded the entire one-acre lot (including Parcel 1, which Zuehlke had purchased) was conveyed to the mortgage holder in the foreclosure deed dated November 28, 2000. The one-acre lot was marketed as foreclosed property. Debtor Robin Poe on March 20, 2001, obtained a deed to the entire tract subject to all rights of redemption from foreclosure.[1]

The Hobsons, who had retained their statutory right of redemption, conveyed that right to Ron Wronski in an instrument dated June 18, 2001, which states as follows:

> In consideration of the payment to Clell and Krystine Hobson of the sum of $100.00, which sum is to be paid not later than 5 business days following the Hobsons' execution and delivery, by fax or otherwise, of this option, the Hobsons hereby assign to Ron Wronski their statutory right, jointly and severally to redeem the Hobsons' former residence in Fairhope, Alabama, which was the subject of foreclosure in November of 2001. If Mr. Wronski does not exercise this right on or prior to September 30, 2001, this assignment shall be deemed null and void. If Mr. Wronski does exercise this right, then upon acquisition by him of the fee title to the subject property, Mr. Wronski shall pay to the Hobsons the sum of $11,000.00. The Hobsons warrant that they are the lawful owner of such statutory right of redemption. "Exercise" shall mean the effectuation (in any forum, including but note limited to legal or equity and/or compromise in satisfaction) of the redemption of the real property located at 6415 Nelson Road by Mr. Wronski, either jointly or severally, by his representative, agent or designee.

Wronski's attorney delivered to the Hobsons a check for $100.00 when the contract was executed.

---

[1] The deed's foreclosure exception specifically referred to the Hobson foreclosure deed.

The Hobsons, by affidavit, testified that the written assignment was intended to include the right to redeem the entire one-acre lot.

On June 22, 2001, Wronski informed Poe by letter that he had acquired the right of redemption and requested a statement of the debt and all lawful charges. On July 2, 2001, Poe replied that the amount of the debt and lawful charges equaled $143,520.49. Richard Davis, Wronski's attorney, responded by letter to Richard Horne, Poe's attorney, that the statement of charges was insufficient and appointed Larry E. Chason as referee. On July 19, 2001, Cliff Brady, also an attorney for Poe, nominated Robert DeMouy as referee. The referees did not act, and communication between the two sides ceased for a time.

During the week of September 23, 2001, Davis called Brady and inquired whether Poe would compromise the amount claimed for improvements in his redemption debt/charges statement. No one from Poe's side responded to Davis's inquiry. Instead, on September 28, 2001, Mr. and Mrs. Poe filed their Chapter 7 bankruptcy petition. Stephen Klimjack, another of Poe's attorneys, wrote warning Wronski not to take any further action against the Poes or their property.

On or before September 28, 2001, Wronski assigned the right of redemption to Dale Zuehlke who immediately assigned it to Commonwealth. Commonwealth filed an adversary proceeding in bankruptcy court and deposited into court the sum of $147,315 for the purpose of effectuating the redemption.[2] In the adversary proceeding, Commonwealth sought a declaration that it was entitled to redeem the property and requested that the bankruptcy court fix the redemption price and determine

---

[2]In its complaint, Commonwealth averred that the amount owed was still undetermined but was not greater than the amount deposited.

the interest of Union Planters Bank, which holds a mortgage on the property. Commonwealth's counsel, Charles Simpson, notified the Hobsons' attorney that Commonwealth had acquired the right of redemption and was proceeding with redemption. Simpson enclosed a trust account check in the amount of $11,000 and asked that the Hobsons' attorney to hold the money in trust. The Hobsons, however, requested that the funds be disbursed, and ultimately Simpson authorized payment of the funds to the Hobsons.

**Bankruptcy Court Proceedings**

Commonwealth filed a motion for summary judgment in the bankruptcy court seeking a declaration of its right of redemption, and the Poes filed a motion for partial summary judgment. The bankruptcy court held that Commonwealth had a valid right to redeem the entire one-acre tract of land which it had lawfully exercised. The court granted summary judgment in favor of Commonwealth and denied the Poes' motion for partial summary judgment. After further hearings, the bankruptcy court entered judgment that fixed the redemption price as the amount paid into court by Commonwealth and ordered that those funds be disbursed as follows: (1) $135,080.81 to Union Planters in satisfaction of the mortgage; (2) $5,000 to Robin Poe in satisfaction of his homestead exemption and (3) the remainder, $7,234.19, to the trustee to be administered for the benefit of the creditors. Following the entry of judgment, the Poes filed this appeal.

**Issues Presented**

On appeal, the Poes argue that the bankruptcy court wrongly decided each of the issues raised on summary judgment. First, appellants argue that the bankruptcy court erred in finding that the right of redemption was lawfully transferred to Commonwealth. Second, appellants assert that if

Commonwealth acquired a right of redemption at all the bankruptcy court should have limited the right to redeem to Parcel 2.  Third, appellants contend that if Commonwealth acquired a right of redemption as to any or all of the property the bankruptcy court erred in permitting the redemption to proceed because Commonwealth failed to exercise the right in the manner prescribed by Alabama law.  Below, the Court will address each of these issues after setting forth the applicable standard of review.

**Standard of Review**

In reviewing a bankruptcy appeal, the district court functions as an appellate court.  *In re Sublett*, 895 F.2d 1381, 1383 (11th Cir. 1990).  The bankruptcy court's decision on summary judgment is reviewed *de novo*.  *In re Optical Technologies, Inc.,* 246 F.3d 1332, 1335 (11th Cir. 2001).

**Was the Right of Redemption Validly Assigned to Commonwealth?**

Commonwealth obtained its purported right of redemption through a chain of conveyances that began with a transfer from the Hobsons to Wronski.  Appellants argue that Commonwealth never obtained a right of redemption because the Hobsons actually conveyed to Wronski an *option* to purchase the right of redemption, not the right itself.  According to appellants, Commonwealth did not comply with the necessary steps to exercise the option and, therefore, does not have a right of redemption.  Appellants' argument is based on their own somewhat distorted interpretation of the Hobson/Wronski agreement and testimony related to it.  Though the agreement is set forth in the facts above, for ease of discussion it is worth repeating here:

> In consideration of the payment to Clell and Krystine Hobson of the sum of $100.00, which sum is to be paid not later than 5 business days following the Hobsons' execution and delivery, by fax or otherwise, of this option, the Hobsons hereby assign to Ron

5

> Wronski their statutory right, jointly and severally to redeem the Hobsons' former residence in Fairhope, Alabama, which was the subject of foreclosure in November of 2001. If Mr. Wronski does not exercise this right on or prior to September 30, 2001, this assignment shall be deemed null and void. If Mr. Wronski does exercise this right, then upon acquisition by him of the fee title to the subject property, Mr. Wronski shall pay to the Hobsons the sum of $11,000.00. The Hobsons warrant that they are the lawful owner of such statutory right of redemption. "Exercise" shall mean the effectuation (in any forum, including but note limited to legal or equity and/or compromise in satisfaction) of the redemption of the real property located at 6415 Nelson Road by Mr. Wronski, either jointly or severally, by his representative, agent or designee.

Appellants argue that both the Hobsons and Wronski have characterized the assignment as an "option" and that the option was not effective until the Hobsons received the $11,000. Since the Hobsons did not receive the $11,000 payment until October 1, one day after the "option" expired, appellants contend that the Wronski/Commonwealth right of redemption expired before it was exercised. Appellants also cite the use of the word "option" in the written agreement as well as testimony by the Hobsons and Wronski that $11,000 was paid in consideration for the right of redemption.

     The simple answer to appellants' argument is that a right to redeem is, by definition, an option. The owner of that right may or may not choose to avail himself of it. Therefore, the use of the word "option" interchangeably with, or in reference to, the term "right to redeem" does not transform the assignment of the right to redeem into the conveyance of the option to acquire the right to redeem.

     Appellants' argument is further undermined by its interpretation of when the purported "option" to acquire the right to redeem transformed into the right to redeem. According to appellants, the right to redeem came into existence only if the Hobsons received the $11,000 payment before September

6

30th. This argument does not taken into consideration a key condition of payment. The agreement called for the $11,000 to be paid "upon acquisition of the fee simple title" by Wronski. Herein lies the Catch 22–if Wronski, or his successors-in-interest, did not obtain the right to redeem until they acquired title, they could never exercise that right because without the right, they could not acquire title and without the title, they could not obtain the right. Appellants interpretation would lead to the inescapable conclusion that the contract is meaningless because Wronski, and his successors-in-interest, purchased an option that the contract prevented them from exercising. Such an interpretation is contrary to "well-established rules of contract construction, [which require that] 'where there is a choice between a valid construction and an invalid construction the court has a duty to accept the construction that will uphold, rather than destroy, the contract and that will give effect and meaning to all of its terms.'" *Ameriquest Mortgage Co., Inc. v. Bentley,* 851 So.2d 458, 464 (Ala.. 2002) (quoting *Homes of Legend, Inc. v. McCollough,* 776 So.2d 741, 746 (Ala.2000)). The bankruptcy court did not err in concluding that the Commonwealth had a valid right to redeem the property.[3]

**Is the Right of Redemption Limited to Parcel 2?**

---

[3] Appellants also advance an additional argument regarding the validity of the assignment, that is, that the conveyance of the right to redeem covered only Parcel 2 because the written agreement described the property as "the Hobsons' former residence in Fairhope, Alabama." Since the Hobson's home was on Parcel 2, appellants assert that the Hobsons conveyed only a portion of their right to redeem, resulting in a "piecemeal redemption" which is disfavored by Alabama law. Again, appellants are attempting to interpret the agreement in a manner that would invalidate it when an equally rational interpretation exists. For some time, the legal title to this property, both Parcels 1 and 2, has been a legal quagmire. The most rational interpretation of the agreement is that the Hobsons intended to convey the right to redeem whatever property was covered by that right. As the bankruptcy court pointed out, even appellants in their bankruptcy petition referred to both parcels of property collectively as the residence located at 6415 Nelson Road.

The right of redemption is a statutory right conferred by Ala. Code § 6-5-248 (1975). In this case, the bankruptcy court, relying on subsection (e) of the redemption statute, found that the Hobsons had a right to redeem both parcels of the one-acre tract. The statute provides that "where debtors or mortgagors have conveyed their interests in the property but remain liable on the debt and are debtors on the date of the foreclosure sale, the debtors or mortgagors retain their right of redemption under this article." *Id.* § 6-5-248(e). The bankruptcy court concluded that because the Hobsons remained liable on the debt at the time of the foreclosure, they retained the right to redeem Parcel 1. But there was no debt on Parcel 1 at the time the Hobsons conveyed it to Zuehlke because the mortgage company had previously released that parcel from the mortgage. Thus, at the time of the foreclosure, the Hobsons were liable on debt that covered only Parcel 2. Because they were not liable on any debt as to Parcel 1, the Hobsons had no statutory right of redemption as to that parcel.

The bankruptcy court held, alternatively, that the Poes were precluded from denying the right of redemption as to Parcel 1 "because the [Poes'] chain of title is derived from the foreclosure sale; if Parcel 1 was not foreclosed, then the [Poes] cannot claim to own it." (Ord. at 9.) The question presented by the declaratory judgment is not, however, who owns Parcel 1. The question is whether Commonwealth has a right to redeem it. The right of redemption is a statutory right, which never arose as to Parcel 1 because that parcel was released from the mortgage prior to foreclosure.

Furthermore, the bankruptcy court concluded that estoppel prevented the Poes from denying Commonwealth's right of redemption because both obtained their rights from a common grantor, making them privies, '[a]nd, those 'claiming from a person who is estopped , are also bound by the estoppel.'" (Ord. at 10.) Although the order does not say so explicitly, it appears that the bankruptcy

8

court invoked the doctrine of estoppel by deed, which the Alabama Supreme Court has described as follows:

> Generally, estoppel by deed against the grantor or those in privity with him may be invoked only in an action *on the deed itself* brought by the grantee or those in privity with him. This follows from the general rule that the party claiming the benefit of the estoppel must show he was induced to change his course or position because of statements or representations in the deed.

*Dominex, Inc. v. Key*, 456 So. 2d 1047, 1057 (Ala. 1984) (emphasis added). Estoppel by deed does not apply, first, because this is not an action on a deed. It is an action to enforce a statutory right. Moreover, even if the assignment of the right of redemption were akin to a deed, there has been no finding that Commonwealth, the party seeking the benefit of the estoppel, was induced to change its course or position based upon any representation made in the assignment. Finally, it would be difficult for Commonwealth to argue that it was induced or misled by the assignment because the assignment does not purport to define what the right of redemption covers. It simply conveys whatever right of redemption the Hobsons had in "[their] former residence in Fairhope, Alabama. . . located at 6415 Nelson Road."

In sum, the Hobsons never owned the right of redemption as to Parcel 1. The Hobsons assignment could not, and did not, convey a right they did not own, and equity does not preclude the debtors from asserting that fact.

**Has Commonwealth failed to exercise properly the right of redemption?**

The Poes argue that Commonwealth has failed to comply with the requirements of the Alabama redemption statutes. According to Alabama law, to exercise a right of redemption the person offering to redeem ("the redemptioner") first "may make written demand of the purchaser or his transferee for a

statement in writing of the debt and all lawful charges" which must be provided to the redemptioner within ten days. Ala. Code § 6-5-252 (1975). Next, the redemptioner must "pay or tender to the purchaser or his or her transferee the purchase price paid at the sale, plus interest. . . and all other lawful charges, . . ." including "permanent improvements, taxes, insurance premiums, amounts paid for liens or encumbrances and mortgages." *Id.* § 6-5-253(a). If the redemptioner disagrees with the value of improvements, Alabama law provides a method by which the value may be ascertained. First, the redemptioner must, within ten days of receiving the purchaser's valuation, appoint a referee. *Id.* § 6-5-254(a). Within ten days thereafter, the purchaser may appoint his own referee. *Id.* The two referees then have ten days to agree upon a valuation, or, if they cannot agree, they must appoint an umpire. *Id.* Within ten days after the appointment of an umpire, the valuation must be decided by a majority of the three. *Id.* If the referees fails to act or to appoint an umpire, then "the appropriate court shall proceed to ascertain the true value of such permanent improvements and enforce the redemption accordingly." *Id.* § 6-5-254(b)

      The Poes argue, as they did below, that Commonwealth is not entitled to redeem any portion of the property because "neither Commonwealth nor its predecessor interest attempted to or actually paid or tendered money to the Poes prior to filing the current lawsuit." (Appellant's Brf. at 25-26.) In response, Commonwealth asserts that tender of payment to the Poes was excused under § 6-5-254(a) because the referees failed to ascertain the value of permanent improvements within the allotted time frame. By July 19, 2001, the second referee had been appointed. According to § 6-5-254(a), the referees had ten days either to reach an agreement as to the valuation or to appoint an umpire, but they did neither.

The referees' failure to act excuses Commonwealth from the tender-of-payment requirement set forth in § 6-5-253(a). "[P]ayment or tender to the purchaser . . . is a condition precedent to filing a complaint to redeem the property, unless the redeeming party has a valid excuse for failing to tender." *Davis v. Anderson*, 678 So. 2d 140, 143 (Ala. Civ. App. 1995). Inability to determine the true amount owed is a valid excuse. *Id.* The Alabama Supreme Court addressed a nearly identical fact situation in *Wallace v. Beasley*, 439 So. 2d 133 (Ala. 1983). In that case, the redemptioner disagreed with the purchasers' valuation of permanent improvements, and each side appointed a referee. When the referees could not reach an agreement, the redemptioner filed suit asking the court to ascertain the true value of the permanent improvements and to fix a redemption price. The redemptioner made no tender of payment to the purchaser and deposited no money into court. The purchasers argued that the redemptioner was not entitled to redeem because he failed either to make a tender of payment as required by the redemption statutes or to provide sufficient excuse for his failure to do so. The supreme court rejected the purchasers' argument, stating: "We are satisfied that the redemptioner provided a sufficient excuse–that there was a bona fide disagreement as to the amount of lawful charges due in this case." *Id.* at 135. Commonwealth has gone a step further than the redemptioner in *Wallace*. After the referees failed to resolve the amount of lawful charges, Commonwealth deposited into court the full amount demanded by the Poes. Due to the dispute over the lawful charges, no tender of payment was required prior to the filing of the adversary proceeding.

**Conclusion**

The bankruptcy court correctly found that Commonwealth had a valid right of redemption and that it exercised that right in accordance with Alabama law. However, the right of redemption that was

11

transferred to and exercised by Commonwealth covered only Parcel 2 of the subdivided one-acre tract. Therefore, the decision of the bankruptcy court is **AFFIRMED**, in part, and **REVERSED**, in part, and **REMANDED** for further proceedings in accordance with this order.

      **DONE** and **ORDERED** this the 16th day of May, 2005.

                                           *s/Charles R. Butler, Jr.*
                                           **Senior United States District Judge**